Civil Action No. 17-cv-01294-RM-NYW

CHRISTINE FRAPPIED,
CHRISTINE GALLEGOS,
KATHLEEN GREENE,
JOYCE HANSEN,
JUDY HUCK,
KRISTINE JOHNSON,
GEORGEAN LABUTE,
JOHN ROBERTS,
JENNIFER RYAN,
ANNETTE TRUJILLO, and
DEBBIE VIGIL,

      Plaintiffs,

v.

AFFINITY GAMING BLACK HAWK, LLC

      Defendant.

---

### THIRD AMENDED COMPLAINT

---

COME NOW the Plaintiffs, Chrisine Frappied, Christine Gallegos, Kathleen Greene, Joyce Hansen, Judy Huck, Kristine Johnson, Georgean LaBute, John Roberts, Jennifer Ryan, Annette Trujillo and Debbie Vigil, by and through their counsel, Lisa R. Sahli, Attorney at Law, PC, and for a Third Amended Complaint against Defendant, Affinity Gaming Black Hawk, LLC, do hereby allege, as follows:

## I. JURISDICTION & VENUE

1.      Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 1331 and 1343. This action is authorized and instituted pursuant to the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §621, *et seq*., Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq*., the Family and Medical Leave Act ("FMLA"), as amended, 29 U.S.C. § 2615(a), and the Colorado Anti-Discrimination Act ("CADA"), Colo. Rev. Stat. §24-34-402, as amended.

2.      Plaintiff Christine Frappied is a 46 year-old female who currently resides in Englewood, Colorado.

3.      Plaintiff Christine Gallegos is a 51 year-old female who currently resides in Arvada, Colorado.

4.      Plaintiff Kathleen Greene is a 63 year-old female who currently resides in Apache Junction, Arizona.

5.      Plaintiff Joyce Hansen is a 65 year-old female who currently resides in Strasburg, Colorado.

6.      Plaintiff Judy Huck is a 65 year-old female who currently resides in Black Hawk, Colorado.

7.      Plaintiff Kristine Johnson is a 67 year-old female who currently resides in Thornton, Colorado.

8.      Plaintiff Georgean LaBute is a 74 year-old female who currently resides in Arvada, Colorado.

9.     Plaintiff John Roberts is a 62 year-old male who currently resides in Otis, Colorado.

10.     Plaintiff Jennifer Ryan is a 43 year-old female who currently resides in Henderson, Colorado.

11.     Plaintiff Annette Trujillo is a 55 year-old female who currently resides in Denver, Colorado.

12.     Plaintiff Debbie Vigil is a 46 year-old female who currently resides in Arvada, Colorado.

13.     Defendant Affinity Gaming Black Hawk, LLC, is a Colorado limited liability company with principal offices located at 3755 Breakthrough Way, #300, Las Vegas, Nevada, registered to do and doing business within the State of Colorado as the Golden Mardi Gras casino.  Affinity Gaming Black Hawk's registered agent for service of process is the Corporation Company, located at 7700 E. Arapahoe Rd., #220, Centennial, CO 80112.

14.     At all times pertinent hereto, Defendant was an "employer" and a "person" under 29 U.S.C. §630(a), (b) & (h); Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. § 2000e(b), as amended; the Family and Medical Leave Act ("FMLA"), 29 U.S.C. § 2611(4), and the Colorado Anti-Discrimination Act ("CADA"), COLO. REV. STAT. § 24-34-401.

15.     Plaintiffs timely filed charges of Discrimination, alleging age discrimination and disparate impact discrimination claims with the Equal Employment Opportunity Commission ("EEOC").  The female Plaintiff's likewise asserted combination age and sex discrimination claims.  In addition, Ms. Trujillo asserted a timely charge of retaliation under the FMLA.  The

EEOC thereafter issued its Dismissal and Notice of Rights on February 24, 2017. A copy of the dismissal was received, if at all, on or about February 27, 2017.

16. Plaintiffs have thus exhausted all administrative prerequisites to filing this lawsuit.

17. Venue is proper in this lawsuit pursuant to 28 U.S.C. §1391(b).

## II. GENERAL ALLEGATIONS

18. Plaintiffs hereby incorporate by reference all prior statements and allegations as if set fully set forth herein.

### AFFINITY ACQUIRES PLAINTIFFS' EMPLOYER AND PLANTIFFS ARE "REHIRED."

19. Prior to their terminations, the Plaintiffs had all worked at the Golden Mardi Gras Casino ("Golden Mardi Gras") for Defendants' predecessor, Golden Mardi Gras, Inc.

20. In or about March 2012, Affinity Gaming, LLC and/or Affinity Gaming of Black Hawk, LLC purchased the Golden Mardi Gras and two other casinos in Black Hawk, Colorado, from The Golden Group. In or about November 2012, Affinity Gaming, LLC and/or Defendant Affinity Gaming Black Hawk, LLC (hereinafter "Affinity") took over the day-to-day operations of all three casinos.

21. In or about January 2013, Defendant held "Genuine Service" trainings for all Golden Mardi Gras employees. Plaintiffs attended Defendants "Genuine Service" training, and each of them consistently followed Defendants' "Genuine Service" philosophy.

22. After taking over operations of the Golden Mardi Gras in November 2012, Defendants required all employees to reapply for their jobs. Each of the Plaintiffs reapplied and

was rehired by Defendants. Plaintiffs are thus "employees" within the meaning of the ADEA, Title VII, the FMLA and CADA.

**EACH OF THE PLAINTIFFS AT ALL TIMES SATISFACTORILY PERFORMED THEIR JOBS.**

23. All of the Plaintiffs genuinely loved their jobs at the Golden Mardi Gras, and enjoyed providing excellent service to casino guests. Each of the Plaintiffs enjoyed the casino's clientele, and many had developed a strong rapport with the casino's regular and VIP guests. Until they were terminated in January 2013, Plaintiffs each successfully performed the requirements of their various positions at the Golden Mardi Gras Casino, as follows:

a) Plaintiff Christine Frappied at all times diligently and successfully performed the requirements of her job as a Food & Beverage cashier from August 2011, when she was hired, until she was laid off on January 4, 2013.

b) Plaintiff Chris Gallegos had approximately seven years' casino experience when she was hired to work by the Golden Mardi Gras as a Coin Room Attendant/Cashier in January 2005. Ms. Gallegos was a loyal and dedicated employee who successfully performed the requirements of her job until she was laid off on January 22, 2013.

c) Plaintiff Kathleen Greene diligently and successfully performed the requirements of her job as a Casino Host/Ambassador from January 5, 2009, when she was hired, until she was laid off on January 18, 2013;

d) Plaintiff Joyce Hansen was hired when the Golden Mardi Gras first opened in 2000, and at all times thereafter diligently and successfully performed the requirements of her job as a Main Banker until she was laid off on January 14, 2013.

e)     Plaintiff Judy Huck commenced her employment in or about January 2005, and was a loyal and dedicated employee for eight years.  Ms. Huck always ranked at or near the top for Main Bankers at the Golden Mardi Gras, and successfully performed the requirements of her job as a Main Banker until she was laid off on January 22, 2013.

f)     Plaintiff Kris Johnson commenced her employment on or about January 16, 2010, and was an experienced Main Banker.  She was knowledgeable of the casino industry in Colorado, and of the Golden Mardi Gras' policies and procedures.  At all times during her employment until her layoff on January 22, 2013, Ms. Johnson at all times worked diligently and satisfactorily performed the requirements of her job.

g)     Plaintiff Georgean LaBute first began working for the Mardi Gras Casino in 2000, and after leaving voluntarily in 2010, she was rehired on September 12, 2011, and thereafter successfully performed the requirements of her job as a Food & Beverage cashier until she was laid off on January 22, 2013.  Ms. LaBute was punctual, reliable, hard-working, experienced and had an excellent rapport with the casino's regular and VIP guests.  Ms. LaBute was never late, and never called in sick.  With one trivial exception, Ms. Labute was never written up or disciplined.

h)     Since commencing his employment on or about September 15, 2010, Plaintiff John Roberts satisfactorily performed the requirements of his job as a Black Jack dealer until he was laid off on January 22, 2013.  Mr. Roberts attendance record was at all times exceptional.  Mr. Roberts enjoyed working with casino guests, and prided himself in keeping them at his table.

i)      When Defendant took over operations, Plaintiff Jennifer Ryan was the oldest beverage server in the Food & Beverage service area, and had many years' experience as a beverage server in the casino industry.  Since beginning her employment on March 6, 2007, Ms. Ryan was punctual, reliable, and at all times satisfactorily performed the requirements of her job until she was laid off on January 22, 2013;

j)      Since commencing her employment on or about June 9, 2009, Plaintiff Annette Trujillo remained a loyal and dedicated Black Jack dealer.  Ms. Trujillo at all times satisfactorily performed the responsibilities of her position until her layoff on January 22, 2013, which came approximately two weeks after she submitted a request for a leave of absence under the FMLA to care for her ailing father.

k)      Plaintiff Debbie Vigil remained a loyal and dedicated employee since commencing her employment as a Food & Beverage Cashier in or about September 2004.  Ms. Vigil at all times successfully performed the requirements of her job until she was laid off on January 22, 2013.

**DEFENDANT PLANS & EXECUTES A DISCRIMINATORY LAYOFF.**

24.     Despite Plaintiffs' enjoyment of their jobs and consistent, satisfactory job performance, after taking over operation of the Golden Mardi Gras in November 2012, Defendants determined (or was odered) to lay off a significant number of  employees from virtually every department of the Golden Mardi Gras Casino. .

25.     Currently available data indicates that Affinity laid off approximately sixty Golden Mardi Gras employees in January 2013.  This was not a reduction in force, however, and Defendant began replacing victims of the layoff in January 2013.

26.     Anecdotal evidence indicates, and discovery in this case may indeed bear out, that the January 2013 layoff was executed in a deliberate effort to eliminate older employees from the casino's workforce.  For example, on one occasion when gaming supervisor, Bryan Bird, greeted Affinity General Manager, Scott Nelson, stating "how are you, Mr. Nelson," Mr. Nelson pointed to then 58-year-old Plaintiff, John Roberts, and responded "I'm not mister, he's mister.," signaling Mr. Nelson's wish or determination not to be identified with older persons.

27.     Likewise, in or about January 2013, Plaintiff Debbie Vigil was discussing the impending layoffs with a coworker who had seen a list ranking employees on Table Games Director, Frank Giannosa's, desk, on which employees' were ranked using a point scale based on their ages, seniority and work ability.

**The Selection Criteria Utilized by Affinity Management Disparately Impacts Older, Particularly Older Female, Workers.**

28.     Notwithstanding this anecdotal evidence, Affinity claims to  have adopted specific gender and age neutral criteria to be used by management in selecting employees for the layoff, including "job performance," "attendance," "attitude," and something loosely denominated as "overall interest in the job." (*See* Respondent's EEOC Position Statemetn, pp. 5-6, attached hereto as **Exhibit 1**).

29.     Plaintiffs were not privy to and cannot know (without discovery) the extent to which, or manner in which, Affinity trained its management on the use of these seemingly age and gender neutral criteria, nor were Plaintiffs privy to individual decisions by Affinity management to use these criteria in order to rid the casino of older workers.   Furthermore,

without discovery, Plaintiffs cannot know whether Affinity scrutinized individual selections or left them to the unchecked discretion of department managers.

30.     Regardless, Defendant claims to have armed individual managers with these neutral selection criteria and, whatever criteria were actually employed by management, the selection process, in fact, had a discriminatory impact on older workers, and older females in particular.

31.     Even assuming Affinity management did utilize the stated selection criteria, the "attitude" and "overall interest in the job" elements are subjective and easily susceptible of discriminatory application by reason of discriminatory intent, subconscious bias and/or prohibited stereotypes by individual managers.

32.     Furthermore, due to the absence of regular performance evaluations of Golden Mardi Gras employees in the years leading up to the layoffs, the "performance" element rested largely on the discretion of management employees in each department during a brief ninety day probation period and this element, in fact, fell more harshly on older, particularly older female workers.

33.     Although Affinity initially employed approximately eighteen male employees in the protected age group, all but eight protected males were eliminated in the January 2013 layoff, despite extensive job knowledge and experience, excellent attendance and satisfactory performance.  Likewise, although Affinity initially employed approximately twenty-two female employees in the protected age group, all but approximately six protected females were eliminated in the January 2013 layoff, again, despite extensive job knowledge and experience, excellent attendance and satisfactory performance.

**AFFINITY'S SELECTION PROCESS CAUSED A SIGNIFICANT DISPARATE IMPACT ON OLDER, PARTICULARLY OLDER FEMALE WORKERS.**

34.     As a direct and proximate result of deliberate age and/or gender discrimination and/or Affinity's selection criteria and/or process, currently available data indicates that Affinity laid off approximately sixty of one hundred and six employees in January 2013.  Again, based on currently available data, of the approximately sixty employees laid off, approximately thirty three were female, and twenty-seven were male.  Of the thirty females who were laid off, at least nineteen were age forty or older.  Of the twenty seven males who were laid off, approximately ten were in the protected age group.

35.     As a direct and proximate result of deliberate age and/or gender discrimination and/or Affinity's selection criteria and/or process, based upon currently available data, of the estimated forty-seven employees who were not laid off on January 2013, approximately eighteen were males and twenty-eight were females.  Again, current data indicates that Affinity retained only eight males in the protected age group, and only six females in the protected age group.

36.     Applying a chi-square test (one-tailed Fisher Exact test) to these numbers produces a statistical significance of approximately 0.01231 for that subgroup of females falling within the protected age group, which meets the threshold requirement to establish that Defendant's facially neutral selection criteria disparately impacted older female workers in violation of the Title VII, the ADEA, ~~Title VII,~~ and/or the CADA.

37.     Although currently available data indicates that slightly more than half of the ~~15~~ fifteen males Defendant~~s~~ retained fell within in the protected age group, Plaintiffs do not yet have all relevant data.  Without complete data, which is discoverable in this action, Plaintiffs are

unable to positively rule out the disparate impact of Defendants' facially neutral selection criteria on older workers as a class.

38.     Each of the Plaintiffs was selected for layoff despite his or her experience, skill, seniority, satisfactory performance, attendance, positive attitude, overall interest in the job, and compliance with Affinity's "Genuine Service" philosophy and training.

39.     Management's explanations to each of the Plaintiffs for their terminations ranged from "I don't know why," to "you did not pass your 90-day probation," to you are "not what Affinity is looking for," and/or an alleged failure to satisfy Affinity's "genuine service" policy.

**AFFINITY HIRES YOUNGER WORKERS TO FILL SLOTS VACATED IN THE LAYOFFS.**

40.     On or about January 10, 2013, in anticipation of the layoffs, Defendants posted an advertisement on Craigslist for 59 open positions.

41.     Currently available data indicates that, in January and February 2013, Defendants hired approximately twenty-four workers to replace the employees who were laid off in January 2013.  Of the twenty-four new hires, only three males and no females fell within the protected age group, and a substantial percentage (fifteen or seventy-one percent) were in their twenties at the time of hire.

42.     Currently available data thus indicates that Defendants replaced Plaintiffs with younger, less qualified workers.

**ANNETTE TRUJILLO IS SELECTED FOR LAYOFF DUE TO HER EXERCISE OF FMLA RIGHTS.**

43.     Approximately two weeks prior to being laid off on January 22, 2013, Plaintiff Annette Trujillo requested a leave of absence to care for her ailing father, pursuant to the FMLA.

Ms. Trujillo was laid off without notice whether her request was approved or denied. When Ms. Trujillo asked Frank Giannosa, Defendant's Table Games Director, why she was being laid off, he responded that he did not know why. In violation of the FMLA, Ms. Trujillo's request to exercise her right to family and medical leave negatively impacted her score in Affinity's selection process for the layoffs.

### III. FIRST CLAIM FOR RELIEF
**(DISCRIMINATORY DISCHARGE IN VIOLATION OF THE ADEA & & C.R.S. §24-34-402)**
**(ALL PLAINTIFFS, EXCLUDING PLAINTIFF JENNIFER RYAN)**

44.　Plaintiffs hereby incorporate by reference all other statements and allegations of this Complaint, as if fully set forth herein.

45.　At all times relevant, Plaintiffs Christine Frappied, Christine Gallegos, Kathleen Greene, Joyce Hansen, Judy Huck, Kristine Johnson, Georgean LaBute, John Roberts, Annette Trujillo and Debbie Vigil were "employees" of the Defendant and protected persons within the meaning of 29 U.S.C. §§630(f) and 631(a), and C.R.S. § 24-34-401.

46.　In or about January 2013, Defendant laid off approximately sixty Golden Mardi Gras employees, including the Plaintiffs.

47.　Although Plaintiffs were well qualified for their jobs, had satisfactorily performed their job duties, and proven themselves over many months or years, and Defendant was aware of Plaintiffs' qualifications and performance, Defendants laid off the Plaintiffs and replaced them with younger, less qualified workers, in violation of 29 U.S.C. §623 and/or COLO. REV. STAT. § 24-34-401.

48.　Defendant selected Plaintiffs for the layoffs because of their ages.

49.     As a direct and proximate result of Defendant's willful discriminatory acts and conduct, Plaintiffs suffered and/or continue to suffer lost wages and benefits, emotional distress, and other damages and losses otherwise described herein.

50.     Defendants' acts and conduct in violating the Age Discrimination in Employment Act and the CADA were willful and/or committed with reckless disregard for Plaintiffs' protected rights.

51.     As a direct and proximate result of Defendants' willful discriminatory acts and conduct, Plaintiffs suffered and will continue to suffer lost wages and benefits, emotional distress, and other damages and losses otherwise prayed for herein.

### IV.     SECOND CLAIM FOR RELIEF
(GENDER DISCRIMINATION IN VIOLATION OF TITLE VII & COLO. REV. STAT. §24-34-402)
(PLAINTIFFS FRAPPIED, GALLEGOS, GREENE, HANSEN, HUCK, JOHNSON, LABUTE, RYAN, TRUJILLO & VIGIL)

52.     Plaintiffs hereby incorporate by reference all other statements and allegations of this Complaint, as if fully set forth herein.

53.     At all times relevant, Plaintiffs Frappied, Gallegos, Greene, Hansen, Huck, Johnson, LaBute, Ryan, Trujillo & Vigil were "employees" of the Defendant and protected persons under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e(f), and COLO. REV. STAT. § 24-34-401.

54.     In or about January 2013, Defendant laid off approximately sixty Golden Mardi Gras employees, including Plaintiffs Frappied, Gallegos, Greene, Hansen, Huck, Johnson, LaBute, Ryan, Trujillo & Vigil.

55.     At the time of the layoff, Plaintiffs Frappied, Gallegos, Greene, Hansen, Huck, Johnson, LaBute, Trujillo & Vigil were all over the age of forty.  Plaintiff Ryan, who was thirty-nine years old at the time of the layoff, was the Golden Mardi Gras' oldest beverage server.

56.     Although Plaintiffs Frappied, Gallegos, Greene, Hansen, Huck, Johnson, LaBute, Ryan, Trujillo and Vigil were all well qualified for their jobs, had satisfactorily performed their job duties, and proven themselves over many months or years, and Defendant was aware of Plaintiffs' qualifications and performance, Defendant deliberately selected these Plaintiffs for layoff  because Defendant viewed older females unfavorably and/or graded older females more harshly than younger females and/or older males, in violation of 42 U.S.C. § 2000e-2(a)(1) and COLO. REV. STAT. § 24-34-401.

57.     Currently available data indicates that, during January and February 2013, Defendant hired approximately twenty-one workers, all but three of whom were under the age of forty, and fifteen of whom were under the age of twenty.  All three new employees over the ge of forty were males.

58.     Defendant's acts and conduct in violating Title VII and the CADA were willful and/or committed with reckless disregard for Plaintiff's protected rights.

59.     As a direct and proximate result of Defendants' willful discriminatory acts and conduct, Plaintiffs suffered and/or continue to suffer lost wages and benefits, emotional distress, and other damages and losses otherwise prayed for herein.

## V.    THIRD CLAIM FOR RELIEF
### (DISPARATE IMPACT IN VIOLATION OF THE ADEA & COLO. REV. STAT. § 24-34-402)
### (ALL PLAINTIFFS, EXCLUDING PLAINTIFF JENNIFER RYAN)

60.    Plaintiffs hereby incorporate by reference all other statements and allegations of the Complaint as if fully set forth herein.

61.    At all times pertinent hereto Plaintiffs Christine Frappied, Christine Gallegos, Kathleen Greene, Joyce Hansen, Judy Huck, Kristine Johnson, Georgean LaBute, John Roberts, Annette Trujillo and Debbie Vigil were "employees" of the Defendant, and were protected persons within the meaning of 29 U.S.C. §§630(f) and 631(a), 42 U.S.C. § 2000e, and C.R.S. § 24-34-401.

62.    In January 2013, Defendant laid off approximately sixty  employees of the Golden Mardi Gras Casino, including Plaintiffs.

63.    Defendant's selection process for the layoff whichcaused a significant disparate impact on older workers in the protected class.

64.    Although Plaintiffs were well qualified for and satisfactorily performed their jobs, as a direct and proximate result of Defendant's  selection process , Plaintiffs Frappied, Gallegos, Greene, Hansen, Huck, Johnson, LaBute, Roberts, Trujillo and Vigil, and each of them, were selected for the layoff.

65.    As a direct and proximate result of Defendant's use of selection criteria and/or a selection process for the layoffs which had a disparate impact upon olderworkers, Plaintiffs Frappied, Gallegos, Greene, Hansen, Huck, Johnson, LaBute, Roberts, Trujillo and Vigil, and each of them, have suffered and/or continue to suffer lost wages and benefits, emotional distress, and other damages and losses otherwise prayed for herein.

## VI.    FOURTH CLAIM FOR RELIEF
### (DISPARATE IMPACT IN VIOLATION OF TITLE VII & COLO. REV. STAT. § 24-34-402)
#### (PLAINTIFFS FRAPPIED, GALLEGOS, GREENE, HANSEN, HUCK, JOHNSON, LABUTE, RYAN, TRUJILLO & VIGIL)

66.    Plaintiffs hereby incorporate by reference all other statements and allegations of this Complaint as if fully set forth herein.

67.    At all times pertinent hereto Plaintiffs Frappied, Gallegos, Greene, Hansen, Huck, Johnson, LaBute, Ryan, Trujillo and Vigil were "employees" of the Defendant, and were protected persons within the meaning of 42 U.S.C. § 2000e(f), and COLO. REV. STAT. § 24-34-401.

68.    In January 2013, Defendant laid off approximately sixty employees of the Golden Mardi Gras Casino, including Plaintiffs Frappied, Gallegos, Greene, Hansen, Huck, Johnson, LaBute, Ryan, Trujillo and Vigil.

69.    Defendant's selection process for the January 2013 layoff caused a significant disparate impact on older female workers in the protected class.

70.    Although Plaintiffs were well qualified for and satisfactorily performed their jobs, as a direct and proximate result of Defendant's selection process, Plaintiffs Frappied, Gallegos, Greene, Hansen, Huck, Johnson, LaBute, Ryan, Trujillo and Vigil, and each of them, were selected for the layoff.

71.    As a direct and proximate result of Defendant's use of selection criteria for the layoffs which had a disparate impact upon older female workers in the protected class, Plaintiffs Frappied, Gallegos, Greene, Hansen, Huck, Johnson, LaBute, Ryan, Trujillo and Vigil, and each of them, have suffered and/or continue to suffer lost wages and benefits, emotional distress, and other damages and losses otherwise prayed for herein.

## VII.   FIFTH CLAIM FOR RELIEF
### (RETALIATION IN VIOLATION OF THE FAMILY & MEDICAL LEAVE ACT)
### (PLAINTIFF ANNETTE TRUJILLO)

72.     Plaintiff hereby incorporates by reference all other statements and allegations of this Complaint, as if fully set forth herein.

73.     At all times pertinent hereto Plaintiff Annette Trujillo was an "employee" of the Defendant, and an "eligible employee" under 29 U.S.C. § 2611(2).

74.     In or about the first week of January 2013, Plaintiff Trujillo requested leave of absence under the FMLA to care for her father.   At all times relevant, Plaintiff's father was suffering from bone cancer, a "serious medical condition" within the meaning of 29 U.S.C. § 2612(a)(1).

75.     At all times relevant, Defendant knew of Plaintiff Trujillo's protected conduct in requesting a leave of absence under the FMLA.

76.     Rather than consider and grant Plaintiff's request, as required by law, Defendant knowingly retaliated against Plaintiff Trujillo for exercising her rights under the FMLA, by selecting Plaintiff for the January 2013 layoff.

77.     Approximately two weeks after she submitted her request for a leave of absence pursuant to the FMLA, on January 22, 2013, Defendant thus terminated Plaintiff's employment.

78.     Defendants' acts and conduct in violating the FMLA were willful and/or committed with reckless disregard for Plaintiff's protected rights.

79.     As a direct and proximate result of Defendant's willful discriminatory acts and conduct, Plaintiff suffered and/or continues to suffer lost wages and benefits, emotional distress, and other damages and losses otherwise prayed for herein.

**VIII.** **SIXTH CLAIM FOR RELIEF**
(INTERFERENCE IN VIOLATION OF THE FAMILY & MEDICAL LEAVE ACT)
(PLAINTIFF ANNETTE TRUJILLO)

80.    Plaintiff hereby incorporates by reference all other statements and allegations of the Complaint, as if fully set forth herein.

81.    At all times pertinent hereto Plaintiff Anette Trujillo was an "employee" of the Defendant, and an "eligible employee" under 29 U.S.C. § 2611(2).

82.    In or about the first week of January 2013, Plaintiff Trujillo requested a leave of absence under the FMLA to care for her father. At all times relevant, Plaintiff's father was suffering from bone cancer, a "serious medical condition" within the meaning of 29 U.S.C. § 2612(a)(1).

83.    At all times relevant, Defendant knew of Plaintiff Trujillo's protected conduct in requesting leave to which she was entitled under the FMLA.

84.    Rather than consider and grant Plaintiff's request, as required by law, Defendant instead determined to interfere with Plaintiff Trujillo's rights to leave under the FMLA, by selecting Plaintiff for the January 2013 layoff.

85.    Approximately two weeks after she submitted her request for a leave of absence pursuant to the FMLA, on January 22, 2013, Defendant thus fired the Plaintiff.

86.    Defendant's acts and conduct in violating the FMLA were willful and/or committed with reckless disregard for Plaintiff's protected rights.

87.    As a direct and proximate result of Defendants' willful discriminatory acts and conduct, Plaintiff suffered and/or continues to suffer lost wages and benefits, emotional distress, and other damages and losses otherwise prayed for herein.

### VII.    PRAYER FOR RELIEF

**WHEREFORE**, Plaintiffs respectfully pray that this Court assume jurisdiction and enter judgment in their favor and against the Defendant, and award all relief allowed by law, including but not limited to, the following:

a)    equitable relief, including back pay, future wages, pension and other benefits, pursuant to 29 U.S.C. §§ 216(b) and 626(b); 29 U.S.C. § 2617; 42 U.S.C. §§ 1981 and/or 2000e-5(g), and Colo. Rev. Stat. § 24-34-405, as established at trial;

b)    Lost wages and benefits and other past and future economic losses as provided by law, in amounts to be established at trial;

c)    compensatory damages including, but not limited to past and future non-pecuniary losses, emotional pain, suffering, inconvenience, mental anguish, loss of enjoyment of life, and other non-pecuniary losses in the maximum amount permitted by 29 U.S.C. §§ 216(b) and 626(b), and 42 U.S.C. §§ 1981a(b) and 2000e-5(g), Colo. Rev. Stat. § 24-34-405, and other applicable law, in amounts to be established at trial;

d)    liquidated damages in an amount to be determined at trial pursuant to 29 U.S.C. §§216(b) and 626(b), and 29 U.S.C. § 2617;

e)    punitive damages pursuant to 42 U.S.C. § 1981a, Colo. Rev. Stat. § 24-34-405, and other applicable law;

f)    reasonable attorney's fees and costs of suit, as permitted by 29 U.S.C. §§ 216(b) and 626(b); 42 U.S.C. § 2000e-5(k) and 42 U.S.C. § 1988(b) & (c); Colo. Rev. Stat. § 24-34-405, Colo. R. Civ. P. 54(d), and other applicable law;

g)    pre-judgment and post-judgment interest at the highest lawful rate;

h)      such other and further relief as the Court deems just and proper.

Respectfully submitted this 19th day ofSeptember, 2017.

LISA R. SAHLI, ATTORNEY AT LAW, LLC

*s/Lisa R. Sahli*
Lisa R. Sahli
12006 Blacktail Mountain
Littleton, CO 80127
(720) 545-1690
Sahlilaw@gmail.com

ATTORNEY FOR PLAINTIFFS

**CERTIFICATE OF SERVICE**

I hereby certify that on October 2, 2017, I electronically served the foregoing **THIRD AMENDED COMPLAINT** via electronic mail, addressed to the following:

Josh Kirkpatrick
JKirkpatrick@littler.com

Jennifer Harpole
JHarpole@littler.com

*s/Lisa R. Sahli*_____