# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No. 17-cv-01294-RM-NYW

CHRISTINE FRAPPIED,
CHRISTINE GALLEGOS,
KATHLEEN GREENE,
JOYCE HANSEN,
KRISTINE JOHNSON,
GEORGEAN LABUTE,
JOHN ROBERTS,
JENNIFER RYAN,
ANNETTE TRUJILLO, and
DEBBIE VIGIL,

    Plaintiffs,

v.

AFFINITY GAMING BLACK HAWK, LLC,

    Defendant.

## ORDER

Magistrate Judge Nina Y. Wang

This matter comes before the court on Plaintiffs' Motion to Quash Subpoenas and for Protective Order ("Motion to Quash") [#60, filed January 19, 2018], which was referred to this Magistrate Judge pursuant to 28 U.S.C. § 636(b), the Order Referring Case dated July 12, 2017 [#11], and the memorandum dated January 22, 2018 [#63]. The court has reviewed the Parties' briefing and the applicable case law, and additionally entertained argument as to these issues during informal discovery dispute conferences. *See, e.g.,* [#78]. Being fully apprised of the premises, the court hereby **GRANTS IN PART** and **DENIES IN PART** Plaintiffs' Motion to Quash.

## BACKGROUND

Plaintiffs Kurt Arntzen, Christine Frappied, Christine Gallegos, Kathleen Greene, Joyce Hansen, Judy Huck, Kristine Johnson, Georgean Labute, John Roberts, Jennifer Ryan, Annette Trujillo, and Debbie Vigil initiated this action on May 28, 2017, alleging that Defendants Affinity Gaming, LLC and Affinity Gaming of Black Hawk, LLC engaged in various types of discrimination when they terminated Plaintiffs' employment at three casinos operated in Black Hawk, Colorado. [#1]. After the Scheduling Conference in this case, the Parties stipulated to the dismissal of Affinity Gaming, LLC, leaving Affinity Gaming of Black Hawk, LLC ("Defendant" or "Affinity Gaming") as the sole defendant. *See* [#18]. A few weeks later, Plaintiff Kurt Arntzen filed a Notice of Voluntary Dismissal, [#25], and Plaintiffs filed an Amended Complaint, followed quickly by a (Corrected) Amended Complaint. [#27, #28]. Ten days later, Plaintiffs filed a (Second Corrected) Amended Complaint, [#31], prompting Defendant to file a "Notice of Non-Opposition to Plaintiffs' (Second Corrected) Amended Complaint," [#33], and Plaintiffs to then file a "Motion to Amend (Corrected) Amended Complaint," [#35]. In granting Plaintiffs' "Motion to Amended (Corrected) Amended Complaint," the court noted that the (Second Corrected) Amended Complaint was, in fact, the Third Amended Complaint, and, in hopes of providing clarity, ordered Plaintiffs to file the operative complaint as the Third Amended Complaint. *See* [#37]. Accordingly, Plaintiffs filed the operative pleading as a Third Amended Complaint on October 2, 2017. [#39].

In the Third Amended Complaint, Plaintiffs Frappied, Gallegos, Greene, Hansen,

Johnson, Labute, Roberts, Ryan, Trujillo, and Vigil[1] (collectively, "Plaintiffs") allege they all worked at the Golden Mardi Gras Casino ("the Casino") for Defendant's predecessor, Golden Mardi Gras, Inc. [#39 at ¶ 19]. In or about March 2012, Defendant purchased the Casino and took over the day-to-day operations. [*Id.* at ¶ 22]. Defendant required all employees, including Plaintiffs, to reapply for their jobs, and each was rehired in or about November 2012. [*Id.*].

In January 2013, however, each of the Plaintiffs was laid off. [*Id.* at ¶ 23]. Plaintiffs claim that they were laid off as a direct and proximate result of age and/or gender discrimination. [#39 at ¶¶ 34-35]. Specifically, Plaintiffs allege that Defendant's use of facially neutral selection criteria disparately impacted older female workers in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"), the Age Discrimination in Employment Act ("ADEA"), and/or the Colorado Age Discrimination Act ("CADA"). [*Id.* at ¶ 36]. Plaintiffs further contend that younger workers were hired to fill open positions in January 2013. [*Id.* at ¶¶ 40-41]. In addition, Plaintiff Trujillo alleges that she was selected for layoff due to her exercise of her rights under the Family Medical Leave Act ("FMLA"). [*Id.* at ¶ 43]. Accordingly:

(1) all Plaintiffs except Plaintiff Ryan assert a count of discriminatory discharge based on age in violation of the ADEA and CADA ("Count I");

(2) Plaintiffs Frappied, Gallego, Green, Hansen, Johnson, LaBute, Ryan, Trujillo, and Vigil assert a count of gender discrimination in violation of Title VII ("Count II");

(3) all Plaintiffs except Plaintiff Ryan assert a count of disparate impact in violation of the ADEA and CADA ("Count III");

(4) Plaintiffs Frappied, Gallego, Green, Hansen, Johnson, LaBute, Ryan, Trujillo, and

---

[1] Judy Huck was also named as a plaintiff in the Third Amended Complaint but has since dismissed her claims voluntarily. *See* [#79, #80].

Vigil assert a count of disparate impact in violation of Title VII and CADA based on Defendant's treatment of "older female workers" ("Count IV");

(5) Plaintiff Trujillo asserts a count of retaliation in violation of the FMLA ("Count V"); and

(6) Plaintiff Trujillo asserts a count of interference in violation of the FMLA ("Count VI"). [#39].

Six months into discovery, on January 19, 2018, Defendant served subpoenas on various non-parties who had employed Plaintiffs, both pre- and post-discharge. *See* [#60]. Each of the subpoenas sought:

> All employment records in your possession, custody or control including but not limited to any and all job descriptions, personnel files, severance agreements, payroll and compensation reports, earnings and tax statements, correspondence/applications, evaluations, performance reviews, grievances or other complaints asserted by or concerning the respective plaintiff, disciplinary records, commendations, training materials, leave or medical information, memos, attendance records, commission reports, sales records, charts or other objects pertaining to: [specific Plaintiff].

*See, e.g.*, [#60-4 at 5]. Defendant also requested that each Plaintiff execute an employment records release to facilitate discovery in conjunction with Interrogatory No. 5. [*Id.* at 2]. The releases would permit employers to:

> [R]elease any and all information in your care, custody and control concerning the employment of [specific Plaintiff] to [defense counsel] and to their representatives, and to permit them to read and to copy or obtain copies of any records concerning the employment and termination of employment of [specific Plaintiff], including, but not limited to, any and all job descriptions, personnel files, severance agreements, payroll and compensation reports, earnings and tax statements, correspondence, applications, evaluations, performance reviews, grievances or other complaints asserted by or concerning [specific Plaintiff], disciplinary records, commendations, training materials, leave or medical information, memos, attendance records, commission reports, sales records, charts or other object(s) pertaining to [specific Plaintiff] which are in the custody of the

> Human Resources Department of the Company or Custodian or Records for whom [specific Plaintiff] is currently employed or was previously employed.

*See* [#60-1].

Plaintiffs objected to the subpoenas and the execution of such releases on the grounds that the discovery sought was overbroad and in violation of their privacy rights. [#60 at 6-7]. Specifically, Plaintiffs contend that their allegations in this action do not subject them to broad-ranging discovery of all employment issues, particularly those that post-date their respective employment with Affinity Gaming. Plaintiffs further argue that Defendant's search for "medical information," is simply irrelevant, and "prohibitively violates Plaintiffs' legitimate privacy interests in their own medical information and histories." [*Id.* at 8]. Finally, Plaintiffs complain that the proposed employment releases suffer from the same flaws, i.e., "failing utterly to correlate" the sought-after discovery with the claims and defenses in this lawsuit, and failing to impose temporal limitations on scope. [*Id.* at 9].

Affinity Gaming responded, arguing that the discovery sought by both the subpoenas and the employment releases is within the appropriate scope of discovery in this matter. *See* [#65]. In particular, Defendant argues that Plaintiffs are seeking more than $1.6 million in economic damages, along with unspecified amount of emotional distress and punitive damages, attorneys' fees, and "other forms of damages," and that the information sought is "squarely relevant to the issues of mitigation and damages." [#65 at 2]. Affinity Gaming argues that the subpoenas and releases are necessary because Plaintiffs have failed to provide the requisite information through party discovery, including but not limited to income records regarding Plaintiffs' post-termination earnings. [*Id.* at 7]. Defendant further contends that Plaintiffs' medical information is relevant and discoverable because they are seeking non-economic damages. [*Id.* at 12]. Finally,

Defendant urges this court to find that Plaintiffs' articulated harm, i.e., potential adverse effects upon their current employment, is not a "clearly defined and serious injury," and is insufficient to justify a protective order. [*Id.* at 13-14].

**LEGAL STANDARDS**

**I.     Rule 26(b)(1)**

Rule 26(b)(1) of the Federal Rules of Civil Procedure defines the scope of permissible discovery here. The Rule permits discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case. Fed. R. Civ. P. 26(b)(1). In considering whether the discovery sought is proportional, the court weighs the importance of the discovery to the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. *Id*.

This definition of the permissible scope does not include all information "reasonably calculated to lead to admissible evidence." The amendments to Rule 26, effective December 1, 2015, purposefully removed that phrase. *See In re Bard Filters Products Liability Litig.*, 317 F.R.D. 562, 564 (D. Ariz. 2016). As explained by the *Bard* court, the Advisory Committee on the Federal Rules of Civil Procedure was concerned that parties and courts had incorrectly used the phrase to expand the scope of discovery to a point where the scope "might swallow any other limitation." *Id.* (citing Fed. R. Civ. P. 26 advisory committee's notes to 2015 amendment). Rather, the applicable test is whether the evidence sought is relevant to any party's claim or defense and proportional to the needs of the case, though the information sought need not be

admissible to be relevant to a claim or defense. *Id.*; Fed. R. Civ. P. 26(b)(1). Rule 401 of the Federal Rules of Evidence defines relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more or less probable than it would be without the evidence."

The Advisory Committee Notes to the 2015 Amendments make clear that the party seeking discovery does not bear the burden of addressing all proportionality considerations. Advisory Comm. Notes to Fed. R. Civ. P. 26(b)(1). Generally, when discovery on its face appears to be relevant, the responding party bears the burden of establishing that the requested discovery does not fall within the scope of relevant evidence, or is of such marginal relevance that the potential harm of discovery is outweighed by the benefit. *Simpson v. Univ. of Colo.*, 220 F.R.D. 354, 356 (D.Colo.2004) (citations omitted). But when the relevance of a discovery request or device is not apparent on the face of the request or device itself, the proponent of the discovery bears the burden of making an initial showing of relevance. *See Thompson v. Jiffy Lube Int'l, Inc.*, No. 05–1203–WEB, 2007 WL 608343, at *8 n.20 (D. Kan. Feb. 22, 2007).

**II.     Rule 45**

A subpoena served on a third party pursuant to Rule 45 of the Federal Rules of Civil Procedure is considered discovery within the meaning of those Rules. *Rice v. U.S.*, 164 F.R.D. 556, 556–57 (N.D. Okla. 1995). Accordingly, a subpoena is bound by the same standards that govern discovery between the parties, and, to be enforceable, a subpoena must seek information that is relevant to a party's claims or defenses and proportional to the needs of the case. *See* Fed. R. Civ. P. 26(b)(1). On a timely motion, the court must quash or modify a subpoena that *inter alia*: (1) fails to allow a reasonable time to comply; (2) requires the disclosure of privileged or

other protected matter, if no exception or waiver applies; (3) subjects a person to undue burden; or (4) requires the disclosure of a trade secret or other confidential research, development, or commercial information. Fed. R. Civ. P. 45(d)(3)(A), (d)(3)(B). Generally, "a party has no standing to quash a subpoena served upon a third party, except as to claims of privilege relating to the documents being sought[,]" or "upon a showing that there is a privacy interest applicable." *Windsor v. Martindale*, 175 F.R.D. 665, 668 (D. Colo. 1997) (citations omitted) ("[a]bsent a specific showing of a privilege or privacy, a court cannot quash a subpoena duces tecum"). "Objections unrelated to a claim of privilege or privacy interests are not proper bases upon which a party may quash a subpoena." *Cobbler Nevada, LLC v. Does*, No. 15-CV-02771-WYD-MEH, 2016 WL 300827, at *1 (D. Colo. Jan. 25, 2016) (citations omitted).

## ANALYSIS

With these standards in mind, the court considers the permissibility of the discovery requests as they pertain to Plaintiffs' respective employment dating to before the casino and then after the casino.

### I.  Pre-Casino Employment

The court begins by noting that the subpoenas and the releases contain no temporal limitation. *See, e.g.,* [#60-4 at 5, #60-1]. Essentially, Defendant seeks the entirety of Plaintiffs' employment records for an indeterminate amount of time, both before and after their tenure at the Casino. But Defendant does not articulate how this information is relevant to Plaintiffs' claims of age and gender discrimination, or FMLA retaliation, *see generally*, [#65], and this court cannot independently discern the relevance. When the relevance of a particular topic is not apparent from its face, the party seeking the information bears the burden of first establishing the

relevance of the information. *See McBride v. Medicalodges, Inc.*, 250 F.R.D. 581, 586–87 (D. Kan. 2008). Affinity Gaming fails to carry its burden as to information regarding pre-Casino employment; therefore, this court **GRANTS** the Motion to Quash with respect to any such information sought by either subpoena or release.

## II.    Post-Casino Employment

The subpoenas and releases directed at Plaintiffs' post-Casino work seek the entirety of any existing employment files, and thus these discovery requests are overly broad on their face. Indeed, Defendant does not articulate how generic, undefined "correspondence" between Plaintiffs and their subsequent employers is relevant to whether Affinity Gaming improperly terminated Plaintiffs on account of their age and/or gender, or whether Affinity Gaming improperly terminated Plaintiff Trujillo for exercising her rights under the FMLA. Nor does generic, undefined "correspondence" appear to bear upon the defenses Defendant raises in its Partial Answer, such as the assertion that it terminated each Plaintiff for legitimate, non-discriminatory reasons. *See* [#41 at 35-36]. Similarly, the catch-all request for "other objects," pertaining to a particular Plaintiff, is simply inappropriate for the issues presented in this case where there are no allegations that put Plaintiffs' post-Casino employment directly at issue. And while Defendant asserts a defense that "Plaintiffs' claims are subject to the doctrine of after-acquired evidence," the record before this court does not demonstrate that such defense was based on specific information, rather than raised as part of a template of affirmative defenses. *See* [#41 at 37]. Accordingly, this court focuses on the three categories of post-Casino documents that Defendant identifies and for which it provides explanations of relevance: (1) payroll and compensation records; (2) disciplinary and attendance records, and performance

relevance of the information. *See McBride v. Medicalodges, Inc.*, 250 F.R.D. 581, 586–87 (D. Kan. 2008). Affinity Gaming fails to carry its burden as to information regarding pre-Casino employment; therefore, this court **GRANTS** the Motion to Quash with respect to any such information sought by either subpoena or release.

## II.    Post-Casino Employment

The subpoenas and releases directed at Plaintiffs' post-Casino work seek the entirety of any existing employment files, and thus these discovery requests are overly broad on their face. Indeed, Defendant does not articulate how generic, undefined "correspondence" between Plaintiffs and their subsequent employers is relevant to whether Affinity Gaming improperly terminated Plaintiffs on account of their age and/or gender, or whether Affinity Gaming improperly terminated Plaintiff Trujillo for exercising her rights under the FMLA. Nor does generic, undefined "correspondence" appear to bear upon the defenses Defendant raises in its Partial Answer, such as the assertion that it terminated each Plaintiff for legitimate, non-discriminatory reasons. *See* [#41 at 35-36]. Similarly, the catch-all request for "other objects," pertaining to a particular Plaintiff, is simply inappropriate for the issues presented in this case where there are no allegations that put Plaintiffs' post-Casino employment directly at issue. And while Defendant asserts a defense that "Plaintiffs' claims are subject to the doctrine of after-acquired evidence," the record before this court does not demonstrate that such defense was based on specific information, rather than raised as part of a template of affirmative defenses. *See* [#41 at 37]. Accordingly, this court focuses on the three categories of post-Casino documents that Defendant identifies and for which it provides explanations of relevance: (1) payroll and compensation records; (2) disciplinary and attendance records, and performance

reviews; and (3) medical information in personnel files.

### A. Payroll and Compensation Records

As observed by Defendant, Plaintiffs concede that their subsequent earnings are relevant to the issues of damages and mitigation. [#60 at 7]. Indeed, Plaintiffs assert that they are "actively working to obtain copies of any outstanding payroll, W-2s, and/or tax returns not in their immediate possession," [#60 at 4], and represent that all documents in each respective Plaintiff's custody and control have been produced or are in process. [#69 at 4]. Affinity Gaming contends that "[a]lmost all of the Plaintiffs have deficiencies in their productions of pay records from their subsequent employers, so the only recourse left to [Defendant] was to issue the Subpoenas to obtain full copies of the compensation records." [#65 at 11]. Plaintiffs dispute this, and provide the court with a chart of payroll and compensation records that they produced by January 16, 2018. [#69 at 4].

Based on its review of the operative pleadings, this court concludes that information regarding Plaintiffs' compensation and benefits earned pursuant to employment held after their termination from the Casino is relevant to the claims and defenses in this action, including the damages sought by each respective Plaintiff and the defense of failure to mitigate asserted by Defendant. *See E.E.O.C. v. Original Honeybaked Ham Co. of Georgia*, No. 11-CV-02560-MSK-MEH, 2012 WL 5430974, at *3 (D. Colo. Nov. 7, 2012). Upon this determination, Plaintiffs bear the burden of demonstrating with sufficient detail or "a compelling showing" that the subpoenas and releases are unduly burdensome. *See Int'l Bhd. Of Teamsters, Airline Div. v. Frontier Airlines, Inc.*, No. 11-cv-02007-MSK-KLM, 2012 WL 1801979, at *7 (D. Colo. May

16, 2012); *Western Convenience Stores, Inc. v. Suncor Energy (U.S.A.) Inc.*, No. 11-cv-01611-MSK-CBS, 2014 WL 1257762, at *6 (D. Colo. Mar. 27, 2014) (collecting cases).

Plaintiffs have not established that the subpoenas to third party employers for payroll and compensation records are overly burdensome. It is clear that production was not complete at the time Defendant filed the motion, but there is no indication that even if Plaintiffs were to produce all documents within their possession, custody, and control, that such production would yield the information pertaining to payroll and benefits equivalent to that held by an employer. In addition, the Federal Rules of Civil Procedure make clear that methods of discovery are not mutually exclusive. Fed. R. Civ. P. 26(d)(3)(A). That is, a party can seek discovery on a particular topic using multiple discovery vehicles, from multiple sources. Accordingly, the court **DENIES** the Motion to Quash as it relates to subpoenas directed at payroll and compensation documents, which reflect each Plaintiff's post-termination income and benefits.

The court, however, declines to order Plaintiffs to execute releases. Neither Rule 33 nor 34 of the Federal Rules of Civil Procedure expressly authorizes a court to compel the execution of releases for information. *See EEOC v. Thorman & Wright Corp.,* 243 F.R.D. 426, 428 (D. Kan. 2007); *Bouchard v. Whetstone*, No. 09-CV-01884-REB-BNB, 2010 WL 1435484, at *1 (D. Colo. Apr. 9, 2010). And, "even courts that compel authorizations from the plaintiff typically require the defendant first to seek the documents directly from the third party who has custody of the documents." *Miller v. Kastelic*, No. CIV.A. 12-CV-02677, 2013 WL 4431102, at *2 (D. Colo. Aug. 16, 2013). Given this court's ruling on the subpoena issues, it finds that releases would be cumulative, and indeed might invite further, unnecessary discovery disputes as the use of releases is not necessarily subject to the same requirements as subpoenas pursuant to Rule 45

of the Federal Rules of Civil Procedure.

B. **Disciplinary and Attendance Records, and Performance Reviews**

This court now turns to whether disciplinary and attendance records, and performance reviews for post-Casino employment are relevant in this action. Defendant contends that each Plaintiff was terminated for disciplinary reasons such as issues with attendance, attitude, or general job performance and, therefore, records concerning Plaintiffs' job performance at subsequent positions are discoverable. [#65 at 4].

As an initial matter, some of the cases cited by Defendant are not directly on point. The court considers first the order from our sister court within the Tenth Circuit, *Harroald v. Triumph Structure-Wichita, Inc.,* No. 10-1281-JAR-KGG, 2011 WL 2118648, at *2 (D. Kan. May 27, 2011), and observes that the decision is not on all fours with the present matter. Contrary to Defendant's parenthetical that indicates the case holds that "performance reviews, job applications and resumes submitted to current employers are discoverable," [#65 at 4], the subpoenas at issue in the *Harroald* case were clearly directed at the plaintiff's *prior* employers. *Id.* at *1 ("At issue is are [sic] third-party subpoenas Defendants served on Plaintiff's *former* employers…") (emphasis added). Similarly, to the extent Defendant suggests that *Stewart v. Orion Fed. Credit Union* stands for a broad proposition that all documents related to post-employment job performance are discoverable, such a suggestion is misplaced. *See Stewart*, 285 F.R.D. 395 (W.D. Tenn. 2012). Rather, despite the similarity of breadth of the original requests, the *Stewart* court only considered a narrowed subset of documents from the plaintiff's former and current employers: performance reviews, reasons for termination, payroll history, and employment applications. *Id.* at 398 ("At the hearing, however, Orion narrowed the scope of its

requested discovery to four types of documents... The court will therefore address only these narrowed requests."). Neither the *Harroald* court nor the *Stewart* court specifically considered or weighed the proportionality of requests for attendance records. *See Harroald*, 2011 WL 2118648, at *1; *Stewart*, 285 F.R.D. at 398. Nor did either court specifically address whether disciplinary records from current employers should be permitted.

The United States District Court for the District of Nebraska, however, found that post-termination employment records, including general job performance records, "reasonably bear upon the defendant's stated reason for [plaintiffs' adverse employment actions] and is reasonably likely to lead to admissible evidence." *E.E.O.C. v. Woodmen of World Life Ins. Soc.*, No. 8:03CV165, 2007 WL 649298, at *5 (D. Neb. Feb. 1, 2007). As discussed above, "reasonably likely to lead to admissible evidence" is no longer the operative standard, but whether the information sought is relevant <u>and</u> proportionate to the needs of the case. Based on the record before it, this court concludes that such information has limited probative value as Plaintiffs' subsequent job performances do not tend to make it more or less likely that Defendant improperly terminated them based on age, gender, or the exercise of FMLA rights. Nor does it seem likely that disciplinary or attendance records, or performance reviews from another employer would contain statements regarding a Plaintiff's work at the Casino. *Cf. Kear v. Kohl's Department Stores, Inc.,* No. 12-1235-JAR-KGG, 2013 WL 628331 (D. Kan. Feb. 20, 2013). And to the extent that Affinity Gaming seeks information to bolster its own asserted legitimate, non-discriminatory reasons for termination, *see* [#64 at 12], it is not clear that the occurrence of disciplinary or performance issues with other employers is probative of Defendant's intent, particularly in light of the fact that many of the Plaintiffs found post-

13

termination employment in non-casino settings. *See* [#69 at 9]. Nevertheless, whether a Plaintiff was terminated and the reasons supporting that termination arguably bear upon the amount of damages a particular Plaintiff may recover and mitigation issues regardless of whether the Plaintiff worked at a casino job.[2] Accordingly, this court **DENIES** the Motion to Quash as to information related to the termination of any Plaintiff, but **GRANTS** the Motion to Quash as to any other disciplinary or attendance record, or performance reviews.

C.   **Medical Records**

Finally, the court turns to considering whether Defendant may seek medical records from Plaintiffs' post-Casino employers. Affinity Gaming contends that medical information within the personnel files of Plaintiffs' subsequent employers is relevant as to Plaintiffs' claims for emotional distress damages. A plaintiff's filing of a lawsuit claiming emotional distress, without more, does not necessarily put an individual's mental state "at issue." *See Truong v. Smith*, 183 F.R.D. 273, 275 (D. Colo. 1998). But to the extent Plaintiffs allege that they suffered "emotional pain, suffering … mental anguish, loss of enjoyment of life," [#39 at 19], courts have found that contemporaneous or subsequent medical records are relevant and discoverable, even when a plaintiff seeks "garden variety" emotional damages under Title VII. *See LeFave v. Symbios, Inc.,* No. CIV.A. 99-Z-1217, 2000 WL 1644154, at *2 (D. Colo. Apr. 14, 2000); *Combe v. Cinemark USA, Inc*, No. 1:08-CV-142 TS, 2009 WL 3584883, at *2 (D. Utah Oct. 26, 2009); *Andreas v. Nw. Mut. Life Ins. Co./Northwestern Mut.*, No. 07-CV-00312 JC/ACT, 2009 WL 10671539, at *3 (D.N.M. Jan. 28, 2009); *Wooten v. Certainteed Corp.*, No. 08-2508-CM, 2009

---

[2] In allowing such discovery, this court does not pass on the distinct issue of whether discovered information will be admissible. *See e.g.*, Fed. R. Evid. 404 (barring character evidence). Such evidentiary issues are left to the sound discretion of the presiding judge.

WL 2407715, at *1 (D. Kan. Aug. 4, 2009). A subpoena for documents is less invasive than a request for an independent medical evaluation of a plaintiff's psychological state, but is still subject to the proportionality considerations of Rule 26(b)(1).

Here, it does not appear to the court that any and all medical information contained in Plaintiffs' personnel files for post-Casino employment is relevant and proportional to the claims for emotional distress. Rather, the court finds that only medical records that reflect a Plaintiff's mental status are relevant. Medical records reflecting a Plaintiff's physical condition, such as pre-employment drug screens or physical examinations, are not relevant. Based on this analysis, the court **DENIES** the Motion to Quash as to medical records related to the mental status of a Plaintiff but **GRANTS** the Motion to Quash as to any other medical documentation.

D.      **Additional Concerns**

Through the Motion to Quash and Reply thereto, Plaintiffs articulate concerns regarding privacy and potential harm to them caused by the revelation to current employers that they are engaged in an ongoing civil litigation. Specifically, Plaintiffs argue that one of the Plaintiffs and her husband were terminated suddenly after their current employer received the subpoena, and that other seasonal employers might "shy away" from employing Plaintiffs. [#69 at 4, 8]. Without diminishing Plaintiffs' concerns, the court notes that the subpoenas on their face do not describe the lawsuit or characterize the particular Plaintiff, *see, e.g.*, [#60-4 at 1-5], and many of the recipients of the subpoenas are sophisticated registered agents for large corporations (e.g., Bed Bath & Beyond, Wal-Mart) who likely respond to subpoenas on a routine basis without involving supervisors. The court expects that Defendant's revised subpoenas directed at post-Casino employers will contain similarly neutral content and inform the non-parties that they may

designate confidential documents under the Stipulated Protective Order [#24] if appropriate, and notes that Plaintiffs may designate any such documents under the Stipulated Protective Order in the event that the non-parties fail to do so, if appropriate. The Parties may raise any other specific concerns to the court through the undersigned Magistrate Judge's informal discovery dispute procedure.

## CONCLUSION

For the reasons set forth herein, **IT IS ORDERED** that:

(1) Plaintiffs' Motion to Quash Subpoenas and for Protective Order [#60] is **GRANTED IN PART and DENIED IN PART**;

(2) A Protective Order is **ENTERED** as to the employment release requested by Defendant through Interrogatory No. 5; and

(3) Defendant may **ISSUE** amended subpoenas to Plaintiffs' post-Casino employers consistent with the limitations set forth herein and Rule 45 of the Federal Rules of Civil Procedure (including the notice requirement).

DATED: April 20, 2018

BY THE COURT:

Nina Y. Wang
United States Magistrate Judge