# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO
## Judge Raymond P. Moore

Case No. 17-cv-01294-RM-NYW

CHRISTINE FRAPPIED, *et al.*,

    Plaintiffs,

v.

AFFINITY GAMING BLACK HAWK, LLC,

    Defendant.

_____

## OPINION AND ORDER
_____

On October 2, 2017, Plaintiffs Christine Frappied, Christine Gallegos, Kathleen Greene, Joyce Hansen, Kristine Johnson, Georgean Labute, John Roberts, Jennifer Ryan, Annette Trujillo, and Debbie Vigil (collectively, "plaintiffs")[1] filed a Third Amended Complaint against Defendant Affinity Gaming Black Hawk, LLC ("defendant"), asserting the following claims for relief: (1) age discrimination in violation of the Age Discrimination in Employment Act ("ADEA") and Colo. Rev. Stat. § 24-34-402 (Claim One); (2) gender discrimination in violation of Title VII of the Civil Rights Act of 1964 ("Title VII") and Colo. Rev. Stat. § 24-34-402 (Claim Two); (3) disparate impact in violation of the ADEA and Colo. Rev. Stat. § 24-34-402 (Claim Three); and (4) disparate impact in violation of Title VII and Colo. Rev. Stat. § 24-34-402 (Claim Four). (ECF No. 39.)[2]

---

[1] A further plaintiff was Judy Huck, however, she has since been voluntarily dismissed from this action (ECF Nos. 79-80).

[2] Plaintiff Annette Trujillo also asserted claims of retaliation and interference in violation of the Family and Medical Leave Act, but, those claims have since been dismissed by way of stipulation (ECF No. 88).

On October 16, 2017, defendant filed a motion to dismiss Claims 2-4 ("the motion to dismiss"). (ECF No. 40.) Plaintiffs filed an amended response to the motion to dismiss (ECF No. 51), and defendant then filed a reply (ECF No. 54).

I.      **Factual Background**

The Court assumes the truth of the following pertinent, non-conclusory allegations from the Third Amended Complaint.

Around March 2012, defendant purchased the Golden Mardi Gras Casino ("the Casino") in Black Hawk, Colorado, and, around November 2012, defendant took over the day-to-day operations of the Casino. (ECF No. 39 at ¶ 20.) After taking over operations of the Casino, defendants required all employees to re-apply for their jobs. (*Id.* at ¶ 22.) Each plaintiff re-applied and was re-hired. (*Id.*)

Around January 2013, defendant held "Genuine Service" training for all employees of the Casino. Plaintiffs attended "Genuine Service" training, and consistently followed defendant's "Genuine Service" philosophy. (*Id.* at ¶ 21.) Until their termination, plaintiffs each successfully performed the requirements of their various positions at the Casino. (*Id.* at ¶ 23.)

After taking over operations of the Casino, defendant decided to lay off a significant number of employees from virtually every department of the Casino. (*Id.* at ¶ 24.) In January 2013, defendant laid off sixty employees out of a total of 106. (*Id.* at ¶¶ 25, 34.) At the same time, defendant began replacing its laid-off employees. (*Id.* at ¶ 25.) Defendant adopted criteria to be used by management in selecting employees to be laid off, including, job performance, attendance, attitude, and overall interest in the job. (*Id.* at ¶ 28.) On one occasion, however, Bryan Bird, a gaming supervisor, greeted Scott Nelson ("Nelson"), the General Manager, saying "how are you,

Mr. Nelson." (*Id.* at ¶ 26.) Nelson pointed to plaintiff John Roberts ("Roberts") and said, "I'm not mister, he's mister." (*Id.*) Around January 2013, plaintiff Debbie Vigil ("Vigil") discussed layoffs with a co-worker who had seen a list ranking employees on the desk of Frank Giannosa, the Table Games Director. (*Id.* at ¶ 27.) The list ranked employees using a point-scale based upon age, seniority, and work ability. (*Id.*)

Defendant employed roughly 18 male employees in a "protected age group," and all but 8 of these men were laid off in January 2013. (*Id.* at ¶ 33.) Defendant employed roughly 22 female employees in a "protected age group," and all but roughly 6 of these women were laid off in January 2013. (*Id.*) Of the roughly 60 employees laid off, roughly 33 were female and 27 were male. (*Id.* at ¶ 34.) Of the 33 females laid off, at least 19 were under the age of 40.[3] Of the 27 males laid off, roughly 10 were in a "protected age group." (*Id.*) Of the 46 employees not laid off in January 2013, roughly 18 were males and 28 were females. (*Id.* at ¶ 35.)[4] Defendant retained eight males in a "protected age group" and six females in a "protected age group." (*Id.*) Applying a "chi-square (one-tailed Fisher Exact test)" to these numbers produces a statistical significance of approximately

---

[3] In paragraph 34, plaintiffs allege both that 33 females and 30 females were laid off. (ECF No. 39 at ¶ 34.) The Court uses the former number mostly because 33 plus 27 (the number of male employees) equals 60 (the alleged number of total employees laid off), whereas 30 plus 27 does not equal 60.

[4] Plaintiffs allege that 47 employees were laid off in January 2013 (ECF No. 39 at ¶ 35), but, that number does not compute with the other numbers plaintiffs have alleged. Notably, 47 plus 60 (the number of employees laid off) does not equal 106 (the total number of pre-layoff employees). In addition, 18 (the number of males retained) plus 28 (the number of females retained) also does not equal 47. The one number that does compute with both of the above calculations is 46, which is why the Court uses that number as the total number of employees who were not laid off.

0.01231 of females "falling within the protected age group." (*Id*. at ¶ 36.) Slightly more than half of the 18 males defendant retained fell within a "protected age group." (*Id*. at ¶ 37.)[5]

Management's explanation to each of the plaintiffs for their terminations ranged from: "I don't know why," to "you did not pass your 90-day probation," to you are "not what [defendant] is looking for," and/or failing to satisfy defendant's "Genuine Service" policy. (*Id*. at ¶ 39.) Each plaintiff was selected for layoff despite his or her experience, skill, seniority, satisfactory performance, attendance, positive attitude, overall interest in the job, and compliance with defendant's "Genuine Service" philosophy and training. (*Id*. at ¶ 38.)

Around January 10, 2013, defendant posted an advertisement on Craigslist for 59 open positions. (*Id*. at ¶ 40.) In January and February 2013, defendant hired approximately 24 workers to replace the employees laid off in January 2013. (*Id*. at ¶ 41.) Of the new hires, only 3 men and 0 women fell within a "protected age group," and a substantial percentage (between 15 and 71 percent) were in their twenties at the time of hire. (*Id*.)[6]

## II. Legal Standard

In evaluating a motion to dismiss under Fed.R.Civ.P. 12(b)(6) ("Rule 12(b)(6)"), a court must accept as true all well-pleaded factual allegations in the complaint, view those allegations in the light most favorable to the non-moving party, and draw all reasonable inferences in the plaintiff's favor. *Brokers' Choice of America, Inc. v. NBC Universal, Inc.*, 757 F.3d 1125, 1135-36 (10th Cir. 2014);

---

[5] In paragraph 37, plaintiffs allege that 15 male employees were retained, while, in paragraph 35, plaintiffs allege that 18 male employees were retained. (*Compare* ECF No. 39 at ¶ 35, *with id*. at ¶ 37.) The Court adopts the latter number because it computes with the allegation that 46 employees were not laid off, and, of these 46 employees, 28 were female (28 plus 18 equals 46), while the former number does not.

[6] The Court does not know if there is a typo in this allegation, but the range between 15 and 71 percent appears remarkably wide.

*Mink v. Knox*, 613 F.3d 995, 1000 (10th Cir. 2010). In doing so, "a court may look both to the complaint itself and to any documents attached as exhibits to the complaint." *Oxendine v. Kaplan*, 241 F.3d 1272, 1275 (10th Cir. 2001). In the complaint, the plaintiff must allege a "plausible" entitlement to relief. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-556, 127 S.Ct. 1955 (2007). Conclusory allegations, however, are insufficient. *Cory v. Allstate Ins.*, 583 F.3d 1240, 1244 (10th Cir. 2009). A complaint warrants dismissal if it fails "*in toto* to render [plaintiff's] entitlement to relief plausible." *Id*. at 569 n.14.

The parties spend some time discussing how this standard applies to this case. (*See* ECF No. 51 at 2-3; ECF No. 54 at 9-10.) The Court need not spend a great deal of time on this matter, however, because the Tenth Circuit Court of Appeals has provided the necessary guidance. Notably, in *Khalik v. United Air Lines*, 671 F.3d 1188, 1192 (10th Cir. 2012), the Circuit explained that, "[w]hile the [Rule] 12(b)(6) standard does not require that Plaintiff establish a prima facie case in her complaint, the elements of each alleged cause of action help to determine whether Plaintiff has set forth a plausible claim." The Circuit further explained that allegations in a complaint that are "so general that they encompass a wide swath of conduct, much of it innocent," are insufficient; instead, allegations must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Id*. at 1191-92 (quotations and ellipsis omitted).

**III.    Discussion**

**A.    Claim Two—Gender Discrimination Under Title VII**

Although the Third Amended Complaint styles Claim Two as one of gender discrimination, as defendant observes in the motion to dismiss, Claim Two is actually one premised upon gender *and* age. (*See* ECF No. 40 at 6.) Plaintiffs do not contend otherwise. (*See* ECF No. 51 at 3-5.) Nor

5

could plaintiffs, given that the Third Amended Complaint alleges that defendant discriminated against "older females." (*See* ECF No. 39 at ¶ 56.) The parties do argue over whether such a claim—i.e., as the parties describe it, "gender plus age"—even exists under the law. The Court addresses that dispute first.

Under the circumstances of this case, the Court finds that plaintiffs may not proceed with their gender plus age claim. The principal reason is that plaintiffs have alleged a standalone age discrimination claim—Claim One—which is evidently viable, or at least plausible, given that defendant does not challenge it in the instant motion to dismiss. The Court, thus, finds that plaintiffs' gender plus age claim is effectively an attempt to have a spare bullet in plaintiffs' chamber should its standalone age discrimination claim fail. Notably, as defendant observes (*see* ECF No. 40 at 7), the scope of liability under the ADEA is narrower than that under Title VII. *See Gross v. FBL Fin. Services, Inc.*, 557 U.S. 167, 174-177, 129 S.Ct. 2343 (2009). In this light, should plaintiffs' standalone age discrimination fail under a narrower scope of liability, plaintiffs would be able to fall-back on their gender plus age claim under a broader scope of liability. The Court will not allow such an attempt to work-around statutory dictates.[7]

This is especially so, here, where plaintiffs have conceded that they do not have a viable standalone gender discrimination claim (*see* ECF No. 51 at 4), yet, chose to plead their gender plus

---

[7] The Court does not find persuasive the cases plaintiffs cite for the purported proposition that courts have allowed gender plus age claims to go forward. (*See* ECF No. 51 at 5.) Most notable is the Second Circuit Court of Appeals' decision in *Gorzynski v. JetBlue Airways Corp.*, 596 F.3d 93 (2d Cir. 2010). Contrary to plaintiffs' contention, the Second Circuit did not "recognize[]" a claim based upon sex plus age. The Second Circuit, in fact, recognized no such claim, instead, concluding that there was no need to recognize such a claim because the plaintiff had a viable age discrimination claim. *Id*. at 110. That is precisely the case here. The Court, thus, also does not find helpful *Cooper v. Corr. Corp. of Am.*, 2015 WL 5736838 (D. Colo. Oct. 1, 2015), given that it relies upon *Gorzynski* in declining to dismiss a sex plus age claim. *See id*. at *3. As for the remaining cases plaintiffs cite, they are district court cases from outside this Circuit, and this Court does not find them persuasive.

age claim under Title VII. Why plaintiffs should be able to handpick the statute under which their gender plus age claim should be governed is unclear. Moreover, closer inspection of the Third Amended Complaint reflects that plaintiffs' *gender* plus age claim is more accurately about 90 percent an age claim and 10 percent a gender claim. More specifically, the principal allegations related to discrimination in Claim Two relate to the age of employees, rather than their gender. (*See* ECF No. 39 at ¶¶ 55, 57.)

As a result, under these circumstances, the Court finds that plaintiffs cannot bring a gender plus age claim.

That being said, given that the Tenth Circuit has not specifically addressed the foregoing issue, it is probably prudent for the Court to address defendant's alternative argument for dismissing Claim Two, which is that the claim is not plausible. The Court agrees with defendant in the sense that the Third Amended Complaint fails to give defendant "fair notice" of the claim and the grounds upon which it rests. *See Khalik*, 671 F.3d at 1192. Notably, the Third Amended Complaint fails to fairly identify the class of individuals who have been subjected to discrimination. All the Third Amended Complaint alleges is that "older females" have been treated more harshly or viewed unfavorably, when compared to "younger females" and/or "older males." (ECF No. 39 at ¶ 56.) Precisely what age one needs to be in order to be considered "older" or "younger" is left entirely to speculation.

In addition, there are simply no meaningful factual allegations in the Third Amended Complaint that plaintiffs were discriminated against due to their gender. The only factual allegation in this regard is that the pertinent plaintiffs were female. If that alone were enough to satisfy a plausibility standard, then few gender discrimination claims would ever be dismissed. At most, the

factual allegations, even the allegations of so-called "anecdotal evidence" (*see* ECF No. 39 at ¶¶ 26-27), relate to *age* discrimination.

As a result, the Court finds that plaintiffs have failed to provide "fair notice" of their gender plus age claim. For this reason, as well as the Court's other finding *supra*, the motion to dismiss is GRANTED with respect to Claim Two.

### B. Claim Three—Disparate Impact Under the ADEA

Defendant argues that Claim Three should be dismissed for two principal reasons: (1) plaintiffs fail to identify a specific employment practice or policy that caused a disparate impact; and (2) plaintiffs fail to offer any statistical data of a disparate impact. (ECF No. 40 at 12-16.)

The Court disagrees that plaintiffs have failed to identify a specific employment policy that caused the alleged disparate impact. Although the Third Amended Complaint does not allege with absolute certainty which specific policy resulted in plaintiffs' alleged discriminatory terminations, it does *identify* a policy, and, more helpfully, the criteria used in selecting employees for termination. Specifically, the Third Amended Complaint identifies four criteria that were used: job performance, attendance, attitude, and overall interest in the job. As such, the Court disagrees with defendant's assertion that plaintiffs are merely attacking the decision-making process as a whole. Although the Court does not have to simply accept the allegations that "attitude" and "interest in the job" were subjective and easily susceptible to discriminatory application, it does not take much imagination for one to agree that "attitude" and "interest" are subjective, and could plausibly have led to discriminatory application. In any event, the Court finds that the Third Amended Complaint provides "fair notice" of the criteria defendant allegedly used in discriminating against plaintiffs.

The Court agrees, however, that plaintiffs have made no allegations, involving statistics or any other form of data, with respect to any disparate impact they suffered due to *age* discrimination. The important matter to note in this regard is the type of discrimination claim brought in Claim Three—it is purely an age discrimination claim. As an initial matter, throughout the Third Amended Complaint, plaintiffs use the phrase "protected age group," but at no point do plaintiffs identify who is in the protected age group or, more importantly, the age that a person needs to be in order to be considered part of said group. It is, thus, impossible to tell whether the group is "protected" as plaintiffs allege. Putting that aside, the only allegations in the Third Amended Complaint, related to the impact of defendant's decision to terminate employees, concern *females* alone. Notably, the Third Amended Complaint only alleges that *older females* were disparately impacted. (ECF No. 39 at ¶ 36.) Although that might be helpful in the event that a gender plus age claim of disparate impact was available, it has nothing to do with pure age discrimination.

In their response, plaintiffs attempt to cure this obvious deficiency in the Third Amended Complaint by setting forth new data related purely to age. (*See* ECF No. 51 at 18.) In doing so, plaintiffs cite to the Third Amended Complaint, but the paragraphs cited have nothing to do with the *new* data set forth in the response. Moreover, plaintiffs cannot use their response in an attempt to amend the Third Amended Complaint. *See* D.C.Colo. L.Civ.R. 7.1(d) (prohibiting a party from including a motion in a response). And, being on their Third Amended Complaint already, plaintiffs would certainly need to file a motion to amend the operative complaint in this case.[8] Therefore, the Court cannot consider the new data set forth in the response. With that being the case, and in light

---

[8] The Court addresses amendment of the Third Amended Complaint more fully *infra*.

of the clear deficiencies in the Third Amended Complaint in this regard, the Court finds that the motion to dismiss should be GRANTED with respect to Claim Three.

## C. Claim Four—Disparate Impact Under Title VII

As with Claim Two, Claim Four is premised not upon *gender* discrimination, but rather gender *plus age* discrimination. The same principle that applied to the Court's finding *supra*—that plaintiffs cannot bring a disparate treatment claim under the circumstances of this case that is premised upon gender plus age—applies with equal force to plaintiffs' disparate impact claim premised upon the same theory. As the Supreme Court has held, "the scope of disparate-impact liability under ADEA is narrower than under Title VII." *Smith v. City of Jackson, Miss.*, 544 U.S. 228, 240, 125 S.Ct. 1536 (2005). Therefore, the Court finds that the motion to dismiss should be GRANTED as to Claim Four.

That being said, given the lack of authority from the Tenth Circuit on this matter, it is again probably prudent for the Court to assess if there is any other reason to dismiss Claim Four. Unlike Claim Two, the Court does not find there to be one. First, the Court has rejected defendant's argument that the Third Amended Complaint does not sufficiently identify a challenged employment policy. Second, with respect to whether the Third Amended Complaint contains sufficient allegations of a plausible disparity, defendant makes no argument that Claim Four is not plausible or does not give fair notice in this regard. Instead, all of defendant's arguments related to statistical disparity pertain to Claim Three, plaintiff's age discrimination claim. (*See* ECF No. 40 at 14-16; ECF No. 54 at 13-15.) In fact, defendant acknowledges that the allegations in the Third Amended Complaint "may be pertinent" to Claim Four (ECF No. 40 at 15), but, then, does not say anything further with respect to that claim. As such, with no argument presented by defendant, the Court

10

would not dismiss Claim Four on these grounds. But, because of the Court's initial finding, Claim Four must be dismissed.

      **D.**      **State Law Claims**

Plaintiffs acknowledge that treatment of their state law claims is the same as for their federal claims. (ECF No. 51 at 5 n.1.) As a result, because the Court has found that all federal components of Claims Two, Three, and Four should be dismissed, the Court likewise finds that all state components of those claims should be dismissed too.

      **E.**      **Amendment**

In their response, plaintiffs allude to the possibility that they may amend the Third Amended Complaint. (*See* ECF No. 51 at 17, 18 n.4.) More specifically, plaintiffs suggest that they may amend the operative complaint in order to "correct preliminary estimates" of statistical disparity. (*Id*. at 17.) As explained *supra*, the information contained in the response is not properly before the Court and will not be considered for purposes of the instant motion to dismiss.

The Court further notes the following. The Third Amended Complaint is plaintiffs' fourth attempt at a complaint in this case. (*See* ECF Nos. 1, 28, 31, 39.) Next, the time to amend pleadings expired on September 8, 2017. (ECF No. 17 at 10.) Next, plaintiffs were more than aware of the hard numbers underlying any potential statistical data when they filed the Third Amended Complaint (at the latest). Notably, with respect to the pertinent disparate-impact age-discrimination claim, plaintiffs were aware of how many employees were laid off and how many of those employees were 40 or older or in a "protected age group." (*See* ECF No. 39 at ¶ 34.) Yet, for some reason, plaintiffs failed to include any allegations with respect to age disparity in the Third Amended Complaint. In a footnote in their response, plaintiffs vaguely assert that their counsel could not "access" an "online

11

tool" in analyzing the data. (*See* ECF No. 51 at 18 n.4.) Whatever this is meant to mean, the Court does not buy it, given that the Third Amended Complaint contains a "one-tailed Fisher Exact test." (*See* ECF No. 39 at ¶ 36.) Thus, assuming that the "online tool" is meant to be the statistical test, plaintiffs did have access to it at the time of drafting the Third Amended Complaint.[9] Next, even if plaintiffs had received new information since filing the Third Amended Complaint, their response was filed in November 2017. No attempt has been made to amend the operative complaint since that time. To the extent it is meant to be a defense, the Court also does not buy plaintiffs' assertion that it made "little sense" to amend the Third Amended Complaint until their data was "complete and accurate." (*See* ECF No. 51 at 18 n.4.) That did not stop plaintiffs including some statistical data in the Third Amended Complaint, so why it should stop them with respect to their age discrimination claim is beyond the Court.

In other words, to the extent it is not clear, it is highly unlikely that, if presented with a motion for leave to amend the operative complaint in this case, the Court would grant any such motion.

F. **Other Pending Matter**

On May 21, 2018, defendant filed a motion to increase the page limit for summary judgment briefing, or, in the alternative, for a status conference ("the motion to increase") (ECF No. 98). Plaintiffs have filed a response (ECF No. 106) and defendant has filed a reply (ECF No. 108). In light of the Court's rulings herein, the motion to increase is DENIED. Notably, although the Court has considered defendant's arguments for why more than 20 pages are needed to address plaintiffs'

---

[9] The Court further notes that, contrary to plaintiffs' apparent belief, the scores in the response and in the Third Amended Complaint do not "differ." (*See* ECF No. 51 at 18 n.4.) There are *no* scores in the Third Amended Complaint related to age discrimination.

claims, in light of the Court dismissing all but one of those claims, there is no need for defendant (or plaintiffs in response) to have more than 20 pages to address one claim, however distinct the individual plaintiffs' facts may be.

IV. **Conclusion**

For the reasons discussed herein, the Court:

(1) GRANTS defendant's Motion to Dismiss Plaintiffs' Second, Third, and Fourth Claims for Relief (ECF No. 40); and

(2) DENIES defendant's Motion to Increase the Page Limit for Summary Judgment Briefing, or, in the Alternative, for a Status Conference (ECF No. 98).

**SO ORDERED.**

DATED this 22nd day of June, 2018.

BY THE COURT:

_____
RAYMOND P. MOORE
United States District Judge