# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 17-cv-01294-RM-NYW

CHRISTINE FRAPPIED,
CHRISTINE GALLEGOS,
KATHLEEN GREENE,
JOYCE HANSEN,
KRISTINE JOHNSON,
GEORGEAN LABUTE,
JOHN ROBERTS,
JENNIFER RYAN,
ANNETTE TRUJILLO, and
DEBBIE VIGIL,

     Plaintiffs,

v.

AFFINITY GAMING BLACK HAWK, LLC,

     Defendant.

---

# ORDER

---

Magistrate Judge Nina Y. Wang

     This matter comes before the court on an issue regarding the appropriate scope of testimony for specially-retained experts pursuant to Fed. R. Civ. P. 26(b)(4), raised during a Telephonic Discovery Conference held July 3, 2018. *See* [#116]. During the deposition of Plaintiffs' specially retained statistical expert, Robert A. Bardwell, Ph.D. ("Dr. Bardwell"),[1] Defendant Affinity Gaming Black Hawk, LLC ("Defendant" or "Affinity Gaming") sought to inquire about calculations and analyses that Dr. Bardwell performed, which do not appear in his final expert report. The Parties appeared before the court on July 3, 2018 for a Telephonic

---

[1] Though this Order refers only to Dr. Bardwell, the court notes that the same principles would apply to Defendant's expert.

Discovery Conference, during which each side had an opportunity to argue in support of its position[2]  The court also asked Plaintiffs' counsel to submit additional information, which was then reviewed by the court *in camera*.

## LEGAL STANDARD

In 2010, in response to concerns regarding the "undesirable effects" of routine discovery into attorney-expert communications and draft expert reports, the United States Supreme Court promulgated amendments to Rule 26(a)(2) and 26(b)(4) of the Federal Rules of Civil Procedure. *See* Fed. R. Civ. P. 26, advisory committee's notes to the 2010 amendment.  As recognized by many courts, the purpose of the 2010 amendments were "meant to alleviate the perceived uncertainty and rising costs associated with attorneys' limited interactions with their retained experts as a result of court opinions allowing discovery of an expert's draft reports and of all communications with counsel."  *Republic of Ecuador v. Bjorkman*, No. 11-CV-01470-WYD-MEH, 2012 WL 12755, at *3 (D. Colo. Jan. 4, 2012), subsequently *aff'd sub nom. Republic of Ecuador v. For Issuance of a Subpoena Under 28 U.S.C. Sec. 1782(a)*, 735 F.3d 1179 (10th Cir. 2013).  After the 2010 amendments, a specially retained expert is generally required to provide the following: a written report that reflects a complete statement of all opinions to be presented and the basis thereof; the facts or data considered by the witness in forming the opinions; any exhibits that will be used to summarize or support the expert's opinion; the witness's qualifications, including a list of all publications authored in the previous ten years; a list of all other cases in which, during the previous four years, a witness testified as an expert in deposition or at trial; and a statement of the compensation to be paid for the study and testimony in the case. Fed. R. Civ. P. 26(a)(2)(B).  The Local Practice of this District also requires parties to disclose

---

[2] The court has attached the Parties' discovery dispute chart as Exhibit 1.

within the report of a specially retained expert the principles and/or methodology used by the expert in coming to his or her opinion. Civ. Case Sched. Order, http://www.cod.uscourts.gov/portals/0/documents/forms/civilforms/2014-civil_case_scheduling_order.pdf.

Rule 26(b)(4) governs disclosure requirements for trial preparation materials of specially-retained experts who are anticipated to testify at trial.[3] Rules 26(b)(4)(B) and (C) protect drafts of any report or disclosure required under Rule 26(a)(2), regardless of the form in which the draft is recorded. Specifically, Rule 26(b)(4)(C) protects certain communications between counsel and a specially retained expert:

> **Trial-Preparation Protection for Communications Between a Party's Attorney and Expert Witnesses.** Rules 26(b)(3)(A) and (B) protect communications between the party's attorney and any witness required to provide a report under Rule 26(a)(2)(B), regardless of the form of the communications, except to the extent that the communications:
>
> (i) relate to compensation for the expert's study or testimony;
>
> (ii) identify facts or data that the party's attorney provided and that the expert considered in forming the opinions to be expressed; or
>
> (iii) identify assumptions that the party's attorney provided and that the expert relied on in forming the opinions to be expressed.

Fed. R. Civ. P. 26(b)(4)(C). The burden of establishing whether the Rule applies lies with Plaintiffs. *See Johnson v. Gmeinder*, 191 F.R.D 638, 643 (D. Kan. 2000) (party invoking the protection of Rule 26(b)(4)(B) has the burden of establishing that the Rule applies). Here, Plaintiffs argue that any analyses not reflected in Dr. Bardwell's final expert report are not

---

[3] Plaintiffs designated Dr. Bardwell as a statistical expert. While conceding that the only claim left in this case after the Order on the Motion to Dismiss is Count I, which is a disparate treatment claim based on age, Plaintiffs nonetheless wish to maintain the ability to rely upon Dr. Bardwell. Because the issue of whether Dr. Bardwell's testimony is relevant and admissible is properly reserved for the presiding judge, the Honorable Raymond Moore, this court proceeds with considering whether the testimony sought is subject to discovery.

discoverable because they are not facts or data that the party's attorney provided which the expert considered, and because the analyses are drafts of Dr. Bardwell's final report.

Defendant contends that the Advisory Committee Notes to the 2010 amendments to Rule 26 make clear that it may inquire as to whether Dr. Bardwell performed "alternate analyses," which were not ultimately included in the final expert report. In particular, Defendant relies upon the following statement:

> Rules 26(b)(4)(B) and (C) do not impede discovery about the opinions to be offered by the expert or the development, foundation, or basis of those opinions. For example, the expert's testing of material involved in litigation, and notes of any such testing, would not be exempted from discovery by this rule. Similarly, inquiry about communications the expert had with anyone other than the party's counsel about the opinions expressed is unaffected by the rule. **Counsel are also free to question expert witnesses about alternative analyses, testing methods, or approaches to the issues on which they are testifying, whether or not the expert considered them in forming the opinions expressed**. These discovery changes therefore do not affect the gatekeeping functions called for by *Daubert v. Merrell Dow Pharmaceuticals, Inc*., 509 U.S. 579 (1993), and related cases.

Fed. R. Civ. P. 26(a)(2)(B) advisory committee's notes to 2010 amendment (emphasis added).

## ANALYSIS

The court begins its analysis by examining the purpose of the 2010 amendments to Rule 26(a)(2)(B) as stated by the Advisory Committee:

> The refocus of disclosure on "facts or data" is meant to limit disclosure to material of a factual nature by excluding theories or mental impressions of counsel. At the same time, the intention is that "facts or data" be interpreted broadly to require disclosure of any material considered by the expert, from whatever source, that contains factual ingredients. The disclosure obligation extends to any facts or data "considered" by the expert in forming the opinions to be expressed, not only those relied upon by the expert.

Fed. R. Civ. P. 26(a)(2)(B). The drafters clearly intended to guard the attorney's case analyses and mental impressions. Indeed, Rule 26(b)(4)(B) was "added to provide work-product protection under Rule 26(b)(3)(A) and (B) for drafts of expert reports or disclosures." Fed. R.

Civ. P. 26(b)(4) advisory committee's notes to 2010 amendment. And Rule 26(b)(4)(C) was added to provide work-product protection for attorney-expert communications regardless of the form of communications, whether oral, written, electronic, or otherwise." *Id.* The Notes indicate that "[t]he protection is limited to communications between an expert witness required to provide a report under Rule 26(a)(4)(B) and the attorney for the party on whose behalf the witness will be testifying, including any 'preliminary' expert opinions." *Id.* Both Rule 26(b)(4)(B) and (C) apply to all forms of discovery, including deposition. *Id.*

But, as Defendant observes, the drafters also stated that Rule 26(b)(4)(B) and (C) were not intended to impede discovery regarding the opinions an expert would offer, or the development, foundation, or basis for those opinions. *Id.* There is no dispute that any analyses performed by the expert underlying the opinions to which he will testify are discoverable. And the Advisory Committee Notes are also clear that Rule 26(b)(4)(C)(ii) contemplates discovery directed at (1) identifying facts or data the party's attorney provided to the expert and that the expert considered in forming the opinions to be expressed, and (2) identifying any assumptions that counsel provided to the expert and that the expert relied upon in forming the opinions to be expressed. *Id.* The operative inquiry, here, is whether Defendant may conduct discovery of analyses undertaken by Dr. Bardwell, but which did not result in an opinion expressed in his final report.

## I.     Alternate Analyses Relied Upon by Plaintiffs

In its discovery dispute chart, Defendant argues that some of the allegations contained in the operative Third Amended Complaint derive from statistical analyses that are not reflected in Dr. Bardwell's expert report. Plaintiffs disputed this assertion during the Telephonic Discovery Conference, arguing that none of the allegations contained in the operative pleading are based on

statistical analyses performed by Dr. Bardwell but not included in his final report. The court has

no reason to doubt the accuracy of counsel's representation as an officer of the court. However,

Affinity Gaming is entitled to confirm with Dr. Bardwell that he did not perform any analyses

that resulted in the allegations asserted in the Third Amended Complaint. And to the extent that

Plaintiffs relied upon any analysis by Dr. Bardwell to assert allegations in the Third Amended

Complaint (or respond to any written discovery), Defendant should be permitted to discover the

analysis performed (assumptions, methodology, and results), though not the communications

between counsel and Dr. Bardwell even if Plaintiffs no longer wish to pursue the same theories.

*See Koninklijke Philips Electronics N.V. v. ZOLL Medical Corp.*, Case No. 10-cv-11041, 2013

WL 812484, *3 (D. Mass. Mar. 4, 2013) (holding that defendant could not avoid disclosure by

disavowing any intent to use the requested information in the future when it had disclosed work

product to support its liability theories).

## II.    Alternate Analyses Not Relied Upon by Plaintiffs

The more nuanced question is whether Defendant can discover information about

analyses performed by a testifying expert when the information is not included in the final expert

report and will not be offered by Plaintiffs at trial. Put another way, in terms of the language of

the Advisory Committee, are any other statistical analyses that Dr. Bardwell performed in the

course of his engagement "preliminary expert opinions," which are protected from disclosure

under Rule 26(b)(4)(B), or are they "alternate analyses," which do not fall within the protections

of Rule 26(b)(4)(B) and (C)? To answer this question, the court again begins by considering the

intent of Rule 26(b)(4) and its foundation in the attorney work product doctrine.

"The intention of the work product rule is to protect the mental impressions and legal

theories of a party's attorney, not its experts. … The court must protect against disclosure of the

attorney's mental impressions, conclusions, opinions, or legal theories under Rule 26(b)(3)(B)." *In re Application of Republic of Ecuador,* 280 F.R.D. 506, 513 (N.D. Cal. 2012) (internal citations omitted). Information that such a communication occurred that does not reveal any substance is not protected. *See Resolution Trust Corp. v. Dabney,* 73 F.3d 262, 266 (10th Cir. 1995) ("Because the work product doctrine is intended only to guard against divulging the attorney's strategies and legal impressions, it does not protect facts concerning the creation of work product or facts contained within work product."); *In re Grand Jury Subpoena,* 246 F.R.D. 673, 678 (D. Kan. 2007) ("[A]lthough the [attorney-client] privilege protects disclosure of substantive communication between attorney and client, it does not protect disclosure of the underlying facts by those who communicated with the attorney."). *Cf. Pepsi-Cola Bottling Co. of Pittsburg, Inc., v. Pepsi/Co, Inc.,* No. 01–2009, 2001 WL 1478659, at *1–*2 (D. Kan. Nov.8, 2001) (compelling a witness to answer a deposition question, finding that the identities of the documents were objective facts and were not, in themselves, the opinion or thought processes of an attorney, observing that the contents of the documents, all of which had already been produced, were not created by the objecting party's attorney in anticipation of litigation). Thus, the mere fact that Dr. Bardwell may have undertaken other analyses is not protected from disclosure.

In response to the court's inquiry, Plaintiffs indicated that "[a]t least some of the calculations at issue appear in a draft of Dr. Bardwell's final report, dated March 26, 2018."[4] By inference, it appears that some alternate calculations do not appear in a draft of Dr. Bardwell's

---

[4] Plaintiffs filed a Motion for Clarification, arguing that responding to the question about whether such analyses occurred would, in itself, violate the protections afforded by the Rule. [#117]. The court permitted Plaintiffs to file their response *in camera*, with the expectation that the submission would reflect substantive information that might be protected, e.g., communications between counsel and Dr. Bardwell or actual drafts of expert reports. Given the court's ruling herein, however, Plaintiffs' response is attached as Exhibit 2 to this Order.

final report.  This distinction is relevant because Rule 26(b)(4), and the attorney work product doctrine upon which it is based, "does not extend to the expert's own development of the opinions to be presented outside of draft reports."  *See In re Application of Republic of Ecuador*, 280 F.R.D. at 513.  The circuit courts that have considered the issue, including the Tenth Circuit, have all concluded that Rule 26(b)(4) provides only two exemptions to discovery: protection for draft reports or disclosures; and communications between a party's attorney and expert witnesses.  *See Republic of Ecuador v. For Issuance of Subpoena Under 28 U.S.C. § 1782(a),* 735 F.3d 179, 1186 (10th Cir. 2013); *Benham v. Ozark Materials River Rock LLC*, 885 F.3d 1267, 1276 (10th Cir. 2018) (observing that Rule 26(b)(4)(C) protects against disclosure of attorney communications with testifying experts and facts known and opinions held by nontestifying experts).  *See also Republic of Ecuador v. MacKay*, 742 F.3d 860, 869-70 (9th Cir. 2014); *Republic of Ecuador v. Hinchee*, 741 F.3d 1185, 1191 (11th Cir. 2013).  The majority of courts considering this issue have concluded that an expert's testing and methodology are not exempt from disclosure by Rule 26(b)(4).  *See In re Application of Republic of Ecuador*, 280 F.R.D. at 513; *Wenk v. O'Reilly*, No. 2:12-cv-474, 2014 WL 1121920, *4 (S.D. Ohio Mar. 20, 2014); *Tessera, Inc. v. Sony Corp.*, No. C 11-043 99 EJD (HRL), 2013 WL 5692109, *4 (N.D. Cal. Oct. 18, 2013); *Robocast, Inc. v. Apple, Inc.*, Case No. 11-234 (RGA), No. 10-1055 (RGA), 2013 WL 12155813, *2-*3 (D. Del. Sept. 18, 2013); *Lucent Techs. Inc. v. Microsoft Corp*., Case No. 07-cv-2000 H (CAB), 2010 WL 11332894, *3 (S.D. Cal. Dec. 16, 2010).  *But see DaVita Healthcare Partners, Inc. v. United States,* 128 Fed. Cl. 584, 591 (2016) (precluding from discovery an expert's work papers, including spreadsheets, graphs, and analyses, so long as they were prepared by the testifying expert to be included in draft reports).

This court is not persuaded otherwise.  During the Telephonic Discovery Conference, Plaintiffs argued that the Advisory Committee's interpretation regarding "alternate analyses" was limited to the context of products liability cases when alternate designs are at issue.  But Plaintiffs provide no authority to support such a position, and this court could not independently find any.  Accordingly, this court concludes that Defendant is entitled to depose Dr. Bardwell about other statistical analyses he performed on the facts and data provided to him about Defendant's workforce and termination decisions.  To that end, Defendant may inquire as to the facts and data that form the basis for such analyses, the assumptions made by Dr. Bardwell, the methodology used or principles applied by Dr. Bardwell, and the outcome of any such analyses. These categories of questions properly serve to ascertain information regarding the reliability of an expert's methodology and the credibility of an expert, and thereby assist the factfinder as well as the court in its function as a gatekeeper for expert opinions.  Defendant may not inquire about what information was conveyed to Plaintiffs' counsel, or whether such analyses appeared in draft reports, or why such analyses did not appear in the final reports, as all of these categories of questions implicate and impinge upon the communications between a party's counsel and a specially retained expert in contravention of Rule 26(b)(4).  Nor may Defendant inquire about any of Dr. Bardwell's opinions that are not reflected in the final report, though Defendant may examine Dr. Bardwell about whether any alternate analyses support or detract from his opinions as reflected in his report.

## CONCLUSION

For the reasons set forth herein, **IT IS ORDERED** that:

(1)     No later than August 17, 2018, Defendant may reconvene the depositions of Dr. Bardwell and Dr. Speakman, for a total of 90 minutes each, limited to their respective alternate analyses and consistent with the rulings stated herein;

(2)     Discovery remains CLOSED for all other purposes; and

(3)     The Final Pretrial Conference set for August 9, 2018 at 10:00 a.m. is **VACATED** and **RESET** to **September 26, 2018 at 10:00 a.m**. in Courtroom A-502, 5th Floor, Alfred A. Arraj United States Courthouse, 901 19th Street, Denver, Colorado.  A proposed Final Pretrial Order is due no later than September 19, 2018.

DATED:  July 26, 2018                          BY THE COURT:

_____
Nina Y. Wang
United States Magistrate Judge